UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sarah W.,[1]

        Plaintiff,          Case No. 23-cv-291 (JRT/LIB)

v.          **REPORT AND RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security Administration,

        Defendant.

      Plaintiff, Sarah W. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. The matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). This Court has jurisdiction over the claims under 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 10, 17], and the Court took the matter under advisement on the parties' written submissions pursuant to the Local Rules governing social security cases in this District.

      For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 10], be **DENIED**, and Defendant's Motion for Summary Judgment, [Docket No. 17], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by her name, only her first name and last initial are provided.

I. **Background**

On August 27, 2020, Plaintiff filed a Title II application for a period of disability and disability benefits. (Tr. 23, 248).[2] On October 30, 2020, Plaintiff also filed a Title XVI application for supplemental social security income. (Tr. 23, 250). In both of her applications, Plaintiff alleged that her disability began on August 1, 2019. (Tr. 23, 250). The Commissioner initially denied Plaintiff's claims on April 22, 2021, and again, upon reconsideration, on June 23, 2021. (Tr. 23, 139, 144, 149, 154, 158, 161, 166, 171, 174). On July 21, 2021, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 23, 176-77).

Administrative Law Judge Nicholas Grey (hereinafter "ALJ") conducted an online video hearing on October 26, 2021. (Tr. 23, 43–70). Plaintiff was represented by Kelly Blad, a non-attorney representative. (Id.). Plaintiff, along with an independent vocational expert, Kimberly Eisenhuth, ("IVE Eisenhuth"), testified at the hearing. (Id.). During the administrative hearing, Plaintiff chose to amend the alleged onset date of her disability to October 30, 2020, and, in doing so, acknowledged that she would not be entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act because the claimant would not have disability insured status on the date of onset. 20 CFR 404.130, 404.131, and 404.315.

As a result of Plaintiff's withdrawal of Plaintiff's Title II claims pursuant to 20 CFR 404.957(a), the ALJ dismissed Plaintiff's request for disability and disability insurance benefits under section 216(i) and 223(a) of the Social Security Act. (Tr. 23-24).[3] In addition, on November

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 8], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 74 exhibits. (See Administrative Record [Docket No. 8]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.
[3] Plaintiff does not challenge the dismissal of her Title II claims because she voluntarily dismissed them.

2

16, 2021, the ALJ issued a decision denying Plaintiff's request under Title XVI for supplemental social security income and issued a decision finding that the Plaintiff was not disabled under the meaning of the Social Security Act. (Tr. 20, 23-37).

Plaintiff thereafter sought review of the ALJ's decision regarding Plaintiff's Title XVI request by the Appeals Council. (Tr. 1–4). Subsequently, on December 7, 2022, the Appeals Council denied Plaintiff's request for review. (Tr. 1). As a result, the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

On February 2, 2023, Plaintiff filed this action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 10, 17], and the Court took the matter under advisement on the written submissions.

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings about the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that

> meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1–5).

### C. Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the Commissioner's decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d

4

at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform any of her prior, relevant work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional

5

capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

**III. Decision Under Review**

The ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 30, 2020. (Tr. 26). This finding is not in dispute. The Court will refer to the time period between Plaintiff's alleged onset date and the date of the ALJ's decision as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairments: periodic fever with aphthous stomatitis, pharyngitis, adenopathy (PFAPA), generalized anxiety disorder (GAD), and post-traumatic stress discord (PTSD)" (Tr. 26-27). Plaintiff does not challenge the findings made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 14.06, 12.06, or 12.15. (Tr. 27-29). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; she could perform occasional balancing, kneeling, stooping, crouching, or crawling; she would need to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, and atmospheric conditions as defined in the Selected Characteristics of Occupations (SCO); she would need to avoid even occasional exposure to hazards such as unprotected heights or dangerous machinery; she could

> engage in simple, generally standardized interactions with others such as taking instructions, providing information, or relaying information and standardized exchanges like taking payments where the price is already set; she would not negotiate or resolve disputes or perform those sorts of more nuanced interactions; she could adapt to work environments with routine, repetitive changes.

(Tr. 29). Plaintiff challenges this RFC determination made by the ALJ, specifically to the ALJ's assessment of Dr. Christensen's opinion.

In making this RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"; however, the ALJ also concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 30-31). Plaintiff does not challenge this credibility determination by the ALJ.[4]

Based on his RFC determination and relying on the testimony from the independent vocational expert, IVE Eisenhuth, the ALJ found that Plaintiff had no past relevant work pursuant to 20 CFR 404.1565 ad 416.965. (Tr. 36). Plaintiff does not challenge this finding.

Finally, at step five, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 36). Relying upon testimony from IVE Eisenhuth, the ALJ specifically found that among the occupations Plaintiff would be able to perform were "mail clerk," of which there are approximately 50,000 positions in the national economy; "inspector, hand packager," of which there are approximately 30,000 positions in the

---

[4] "Social Security Ruling 16-3p eliminates the use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020). SSR 16-3p applies to the present case, "but it largely changes terminology rather than the substantive analysis to be applied," and in discussing said determination, Courts have continued to use the "credibility" terminology. Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020).

7

national economy; and "garment sorter," of which there are approximately 45,000 positions in the national economy. (Tr. 37). Plaintiff does not directly challenge the ALJ's findings at step five, other than an implicit derivative challenge based on Plaintiff's aforementioned challenge to the ALJ's RFC determination.

The ALJ thus concluded that Plaintiff was not under a disability under section 1614(a)(3)(A) of the Social Security Act at any time during the adjudicated period. (Tr. 37).

## IV. Analysis

Plaintiff asserts one overarching argument in her appeal of the ALJ's decision: the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly discounted Clinical Psychologist Dr. Daniel Christensen, Psy.D., LP's opinions. (See Plf.'s Mem. [Docket No. 11] at 6–13; Tr. 819). Specifically, Plaintiff argues that, in making his RFC determination, the ALJ failed to give proper weight to the opinions of Dr. Christensen, who was the Plaintiff's treating mental health provider; failed to explain how he considered the supportability and consistency factors of 20 CFR §§ 416.920c(b)(2), and 416.920c(c)(1)-(2); and failed to properly take into account Dr. Christensen's letters and opinions regarding Plaintiff's condition. (Id.).[5]

Defendant contends that the ALJ gave appropriate credit to Dr. Christensen and the letters he provided on Plaintiff's behalf. (Def.'s Mem. [Docket No. 17] at p. 18). Defendant contends that she is entitled to summary judgment, arguing that Plaintiff fails to identify any error worthy of remand. (Id.).

---

[5] On January 18, 2017, the Social Security Administration published final rules, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (2017), which replead the longstanding Treating Physician Rule. As such, the opinion of a treating physician is no longer mandatorily given "controlling weight." ALJs are now to "consider" the "persuasiveness" of opinions from all medical sources. 20 CFR §1520c(a).

8

"[A] claimant's RFC is a medical question," and therefore, "an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017) (quoting Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008)). "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner [through the ALJ] based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Noerper v. Saul, 964 F.3d 738, 745 (8th Cir. 2020) (internal citations omitted); see Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

In making the RFC determination, the ALJ has a duty to sufficiently develop the record to permit meaningful review on appeal. See Noerper, 964 F.3d at 747. This duty to develop the record "arises from the simple fact that the disability determination process is not an adversarial process," and thus, the duty to develop the record "exists alongside the claimant's burden to prove [her] case." Id. Moreover, the ALJ's duty exists even when a claimant is represented by counsel. Id. The Eighth Circuit Court of Appeals has "repeatedly recognized this duty," and it has "remanded for further development of the record not only where evidence of functional limitations is lacking, but also where the record presents conflicting medical opinions as to which the Commissioner fails to explain a choice." Id.

In crafting his RFC determination, the ALJ discussed and assessed the opinions of Dr. Christensen. (Tr. 35-36). The ALJ's discussion of Dr. Christensen's opinions starts with the doctor's letter, dated February 28, 2021, which discusses Plaintiff's "desire to engage in meaningful work" but how Plaintiff "struggles to consistently/meaningfully function in the context of normal tasks and pressures of reasonable expectations that are inherent in work related [sic]

9

mental activities." (Tr. 35, 715). The ALJ then discussed Dr. Christensen's second letter, dated May 19, 2021. (Tr. 35. 817-818). This second letter is nearly identical to the first, but the ALJ quotes Dr. Christensen's addition, which recounts that the Plaintiff "struggles to consistently/meaning function in the context of sustaining competitive employment that is inherent in work related [sic] mental activities (e.g. working eight hour days not missing more than two or three days a month due to her condition with 'competitive' defined as earning more than $1,310 or more per month)." (Tr. 35, 818). The ALJ further noted that Dr. Christensen further opined (through a check-the-box form) that the Plaintiff "would likely be absent from work more than three days per month and that she has marked or extreme limitation of the ability to perform several mental work-related activities, including the ability to interact appropriately with the general public and to be aware of normal hazards and take appropriate precautions." (Tr. 35, 820).

After discussing these opinions, the ALJ concluded that "Dr. Christensen's opinions [were] not persuasive for several reasons." (Tr. 35). First, the ALJ noted that the claim that Plaintiff "is unable to sustain competitive employment" addressed a legal vocational determination which was reserved for the Commissioner and therefore was neither valuable nor persuasive. (Tr. 35). Thus, the ALJ discounted such information in so far as Dr. Christensen attempted to advocate for Plaintiff. (Tr. 35).

Secondly, the ALJ found that Dr. Christensen's conclusions found in the "check-box form" had little explanation of the medical or other evidence relied on in support of the marked and extreme limitations he cited. Plaintiff challenges this language on the grounds that by limiting the opinion to only the information found in the "check-box form," the ALJ violated his duty to also consider other information found in the letters Dr. Christensen submitted. (Plf.'s Mem. [Docket No. 11] at p. 10). However, quite clearly, the ALJ did not only consider the conclusions on the

"check-box form," but instead, the record shows that the ALJ reviewed Dr. Christensen's letters as a whole because the ALJ had already discussed such opinions earlier in the paragraph. (Tr. 35).

Plaintiff also asserts that the ALJ errored in not finding the check-box form at issue here to be fully persuasive. District courts and the Eighth Circuit have noted that a check-box opinion, such as the one at issue here, have "little evidentiary value when it … 'provides little to no elaboration.'" Anderson v. Astrue, 696 F.3d 790,794 (8th Cir. 2012) (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010); see also, e.g., Williams v. Saul, No. 2:19-CV-88 RLW, 2021 U.S. Dist. LEXS 61596, 2021 WL 1222770, at *12 (E.D. Mo. Mar. 31, 2021); Corwin v. Saul, No. 20-CV-2003-LTS, 2121 U.S. Dist. LEXIS 63264, 2021 WL 1593258, at *12-13 (N.D. Iowa Mar. 8, 2021), report and recommendation adopted, No. C20-2003-LTS, 2021 U.S. Dist. LEXIS 61574, 2021 WL 1224906 (N.D. Iowa Mar. 31, 2021); Weddington v. Saul, No. 2:20-CV-00011-JJV, 2020 U.S. Dist. LEXIS 140392, 2020 WL 4555667, at *3 (E.D. Ark. Aug. 6, 2020).

Despite the current caselaw, Plaintiff argues the ALJ should have credited the check-box forms because, when conserved with all of the evidence from Dr. Christensen, the conclusions found in the check-boxes are supported. Plaintiff highlights how Dr. Christensen's letters describe a complex history of PTSD from her history of sexual abuse; how Plaintiff struggled with a dissociative identity disorder with complex underlying emotional deregulation; and that despite a desire to engage in meaningful work, Plaintiff struggled to function in the context of normal tasks and work-related mental activities. (Tr. 714, 818). Plaintiff argues that if the ALJ had properly considered all the above, then the ALJ should have found the conclusions in the check-box form persuasive.

However, although Plaintiff frames the argument as a failure to consider evidence in the record, what she is really asking is for the Court to reweigh the evidence to support a different

11

conclusion. There is no evidence that the ALJ failed to consider all of Dr. Christensen's evidence that the Plaintiff submitted. The ALJ, in this instance, made a valid determination that Dr. Christensen's opinions listed in the check-box form were not supported by evidence of the kind anticipated by 20 CFR § 416.920c.

Plaintiff further argues that the two letters Dr. Christensen wrote provide such support and were "the exact pieces of evidence that the ALJ was required to consider with analyzing the supportability factor." (Tr. 714-715, 817-818; Plf.'s Mem. [Docket No. 11] at p. 11). However, the ALJ quite clearly considered such letters in the same paragraph. (Tr. 35). "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." Wildman, 596 F.3d at 966 (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). Moreover, an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Id. As such, Plaintiff's objection that the ALJ failed to discuss certain evidence does not equate to the ALJ failing to consider such evidence.[6]

As such, the ALJ properly considered the letters, along with the check-box form, and then found Dr. Christiansen's opinion unsupported, inconsistent, and therefore unpersuasive (Tr. 35-36). The Court will not reweigh the evidence, and thus, the Court will not reverse the ALJ's decision regardless of whether a Plaintiff can offer a possible alternative route to a different

---

[6] Moreover, Dr. Christensen's letters do not support his check-box conclusions to the extent Plaintiff suggests. The letters provided a description and summary of Plaintiff's condition and how it has developed through the years. (Tr. 714, 817). Dr. Christensen describes how Plaintiff has been "committed to the therapeutic process" and that she told Dr. Christensen that "she is aware of her condition and needs someone who is able to see her and give her the emotional space to sort out her trauma history." (Tr. 714-715). And that Plaintiff "is working to identify and differentiate her best adult understanding of who she is in the here and now and orient traumatized associations/emotions out of the traumatic past and into the adaptive present." (Tr. 714-715). Dr. Christensen, in a section labeled "Psychiatric History," mentions that Plaintiff "becomes easily overwhelmed and struggles to maintain concentration, persistence, and pace in circumstances including expectations of consistency and bureaucratic processes including filling out forms and attending to detailed instructions." (Tr. 817). Dr. Christensen estimated that Plaintiff canceled as many as two of her weekly treatment sessions each month due to self-reported "flare-ups" related to autoimmune symptoms. (Tr. 817). However, Dr. Christensen also expressed confidence that Plaintiff "will be able to liberate herself from her profoundly traumatic past and be able to manifest her attributes and capabilities in the direction of her values and interests." (Tr. 715, 818).

conclusion. Kraus v. Saul, 988 F. 3d 1019, 1024 (8th Cir. 2021); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (internal quotations omitted).

Plaintiff's last argument pertains to the absence of Dr. Christiansen's treatment notes from the Record and that the ALJ relied on the omission of these notes as a reason to discredit Dr. Christensen's opinions. (Plf.'s Mem. [Docket No. 11] at p. 12). Plaintiff argues that this was improper because the Social Security Administration guidelines allow psychotherapy notes to be separate from other medical records and that Dr. Christensen's decision not to provide such notes should not be held against her. (Id. at 12-13). In other words, Plaintiff argues that she was "penalized because her psychologist summarized her treatment rather than provid[ed] the psychotherapy notes." However, the Social Security Administration does not consider "medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date" as part of psychotherapy notes.[7] As such, Dr. Christensen could have submitted all of the above materials, which the Social Security Administration does not consider psychotherapy notes to support his findings.

---

[7] Fact Sheet for Mental Health Care Professionals, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/disability/professionals/mentalhealthproffacts.htm (last accessed Nov. 16, 2023).

Dr. Christiansen failed to supply any contemporaneous evidence of his treatment, including information not designated as psychotherapy notes. In addition, the ALJ noted that Plaintiff did not "allege that Dr. Christensen kept session notes or provided notice of outstanding records from this source." (Tr. 33).[8] This, combined with the inconsistency of Dr. Christiansen's opinion in light of the record on the whole, led the ALJ to conclude Dr. Christensen's opinion was unpersuasive.

The Court must view the record with deference to the ALJ's findings that are substantially supported by the record. Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018) ("Our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized"). As such, the Court will not reweigh the evidence that was presented. See Schmitt v. Kijakazi, 27 F.4th 1353, 1361 (8th Cir. 2022).

Therefore, the Court's review of the record indicates that the ALJ's RFC determination is supported by substantial evidence. Accordingly, the undersigned recommends that Plaintiff's Motion seeking for the Court to reverse the ALJ's decision and remand this case for further proceedings be **DENIED**.

## V. Conclusion

The Court's review of the record, as a whole, indicates that the ultimate decision that Plaintiff was not disabled as defined by the Social Security Administration Act during the adjudicated period was supported by substantial evidence in the record.

Specifically, on the Court's review of the record, as a whole, the ALJ's decision to discount Dr. Christensen's opinions as being unpersuasive in light of the record as a whole is supported by substantial evidence in the record.

---

[8] It is the responsibility of the claimant to provide evidence that the Social Security Administration will use to make a finding on a claimant's residual functional capacity. 20 CFR § 404.1545(a)(3).

Therefore, it is recommended that Plaintiff's Motion for Summary Judgment, [Docket No. 10], is **DENIED**; Defendant's Motion for Summary Judgment, [Docket No. 17], is **GRANTED**; and this matter is **DISMISSED with prejudice**.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 10], be **DENIED** and;

2. Defendant's Motion for Summary Judgment, [Docket No. 17], be **GRANTED**.

Dated:  January 12, 2024                                        s/Leo I. Brisbois
                                                                Hon. Leo I. Brisbois
                                                                United States Magistrate Judge

**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).